IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VICKI TROTT | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | NO. |
| v. | : | |
| | : | |
| LIBERTY LIFE ASSURANCE COMPANY | : | ERISA - JURY TRIAL NOT |
| OF BOSTON | : | REQUESTED |
| | : | |
| Defendant. | : | |

## COMPLAINT

### I. Jurisdictional Statement

1. Vicki Trott's claim relates to an "employee welfare benefit plan" as defined by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* The subject Group Disability Income Policy of Highmark Inc., her employer, constitutes a plan under ERISA. Plaintiff alleges that this Court's jurisdiction is additionally invoked pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e) and (f).

2. Venue is proper under ERISA, 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b) because such action may be brought where (1) the plan is administered, (2) where the breach took place, or (3) where the Defendant resides or may be found.

3. At all times relevant herein, and for a significant period of time prior thereto, Plaintiff was an Associate Customer Service Representative employed by Highmark Inc., and as such has standing to bring this action under ERISA, 29 U.S.C. § 1132(a). She is a vested "participant" in the group plans within the meaning of 29 U.S.C. § 1002(2)(7).

4. Venue is proper in the Middle District of Pennsylvania. 29 U.S.C. 1132(e)(2), 28 U.S.C. § 1391.

## II. Nature of Action

5. This is a claim for an award to Plaintiff of Long Term Disability Insurance Benefits pursuant to a policy of insurance underwritten by the Liberty Life Assurance Company of Boston to provide Long Term Disability Insurance Benefits ("Plan") to employees of the Highmark Inc. This action is brought pursuant to § 502(a)(1)(B) of ERISA (29 U.S.C. § 1132(a)(1)(B)).

## III. The Parties

6. Plaintiff, Vicki Trott (hereinafter "Plaintiff"), D.O.B. February 26, 1962, is an adult individual who is a citizen of the Commonwealth of Pennsylvania, County of Dauphin, residing at 985 Highland Street, Harrisburg Pennsylvania 17113.

7. At all times relevant, Plaintiff had been an Associate Customer Service Representative employed by the policyholder, Highmark Inc.

8. Liberty Life Assurance Company of Boston (hereinafter "Defendant") offers group life, accident and disability insurance coverage. Defendant operates as a subsidiary of Liberty Mutual Group, Inc.

9. Defendant's principal place of business and headquarters are located in the Commonwealth of Massachusetts at 175 Berkeley Street, Boston Massachusetts 02116.

10. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. § 1002(1); and incident to her employment, Plaintiff received coverage under the Plan as a "participant" as defined by 29 U.S.C. § 1002(7). This claim relates to the forgoing Plan.

11. At all times relevant, Defendant was a fiduciary of the Group Disability Income Policy within the meaning of ERISA § 3 (21), 29 U.S.C. § 1002(21)(A) in that Defendant was

appointed by the Plan Administrator for the Plan as a "named fiduciary" and exercised authority and control over the payment of Long Term disability benefits, which are Plan assets.

12. Defendant is also the "appropriate named fiduciary" of the Long-Term Disability Plan as described in 29 C.F.R. § 2560.503-1(g)(2), and therefore functioned as the Long-Term Disability Plan Administrator for claims procedure proposes.

### IV. The Policy

13. Defendant issued Group Long Term Disability ("LTD") Insurance coverage to Highmark Inc., Policy No. GF3-830-510001-01. That Policy provides income replacement of up to 60% of Plaintiff's monthly earnings up to a maximum of $5,000.00. The Policy contains a 6 month [180 day] Elimination Period and provides monthly benefits up to age 65.

14. Plaintiff's monthly earnings prior to disability, were $2,423.83. Plaintiff is therefore entitled to a Monthly Benefit of $1,454.30.

15. The LTD Policy defines *"Disability/Disabled as:*

*a.    Disability or Disabled mean that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness is unable to perform all the Material and Substantial Duties of their own occupation; and,*

*b.    Thereafter, the Covered Person is unable to perform, with reasonable continuity, Material and Substantial duties of any occupation.*

## V. **Failure to Pay Benefits Due Under the Group Long Term Disability Plan**
### I. **The Disability Claim – Extensive Medical History**

16. On January 20, 2015, Plaintiff ceased working for Highmark Inc. as an Associate Customer Service Representative due to joint pain, swelling, and fatigue.

17. In addition to the above impairments, Plaintiff also suffers from: primary generalized osteoarthritis involving multiple joints, myalgia, abnormal immunological findings, hypothyroidism, depression, anxiety, and vitamin D deficiency.

18. Plaintiff's chronic fatigue and generalized osteoarthritis causes muscle weakness, profound insomnia, and decreased energy with loss of interest in doing things she normally likes doing.

19. Plaintiff's treating physician, Dr. Roy Williams, board certified in oncology and internal medicines ordered diagnostic imaging of Plaintiff's bilateral upper extremities after Plaintiff complained of joint pain and stiffness in the bilateral upper extremities.

20. On February 15, 2016, Defendant's Doctor, Dr. Chirag Raval, board certified in Psychiatry and Neurology, completed a file review and addendum in which he concluded that "the medical records submitted still do not reasonably support the insured has impairments attributable to the presence of mental illness that would preclude her from carrying out usual life activities, including work."

21. On September 16, 2016, Defendant's Doctor, Dr. Alfred Becker, board certified in Internal Medicine and Rheumatology, completed a file review and concluded that there were no impairing diagnoses that were supported by the medical evidence. Dr. Becker supports this conclusion by citing, "there was no clear indication of any significant range of motion

deficits, motor strength deficits, sensory deficits, or balance or gait dysfunctions to warrant restrictions and limitations from a rheumatology standpoint."

22. During a November 10, 2016 follow up visit with treating specialist, Dr. Ravi Acharya, board certified rheumatologist, Dr. Acharya reported physical exam findings of painful restricted overhead abduction of the left shoulder with subdeltoid bursa tenderness; osteoarthritis changes in the bilateral hands; osteoarthritis changes in the bilateral feet with prominent osteophytes with bunion along bilateral 1st MTPs; bilateral knee crepitus; and postural upper thoracic kyphosis.

23. On November 10, 2016, Dr. Acharya administered a steroid injection into the Plaintiff's left shoulder.

24. On November 17, 2016, an x-ray of Plaintiff's right shoulder demonstrated acromioclavicular joint degenerative arthropathy.

25. Plaintiff reported that she experiences intermittent increased joint pain with colder/rainy weather and prolonged inactivity.

26. In addition, Dr. Acharya noted that Plaintiff has recurrent major depressive episodes, an anxious state, malaise and fatigue.

27. On January 11, 2017, Dr. Susan Maltser, board certified in physical medicine and rehabilitation, completed a file review for Defendant and opined that for the period of 9/20/2016 to the present, Plaintiff was not physically functionally limited from sustaining full time work capacity and did not require any medically necessary work activity restrictions due to the fact that there were no reported medication side effects.

28. Dr. Raval does remark that Dr. Horan specified during peer to peer discussion, that it appeared pain was primary and mood issues were severe but secondary making it difficult to participate in some relaxation therapy.

29. Dr. Raval's opinion clearly differs from that of Dr. Horan's that Plaintiff does not require a psychiatric treatment at a more intensive level.

30. Ms. Reddinger reviewed Plaintiff's job description as described by the Dictionary of Occupational Titles ("DOT"). She opined that Plaintiff's past work was performed at a sedentary exertional level.

31. In their denial letter, Defendant concluded the records support restrictions to include: sit frequently with standing/stretching break every 30 minutes for comfort lasting 2 to 3 minutes; stand frequently with breaks for comfort every 30 minutes for 2 to 3 minutes; lift, carry, push and/or pull frequently weights less or equal to 20 pounds on a frequent basis; and overhead reach with upper extremities only occasionally.

32. In their denial letter, Defendant found that Plaintiff would not be precluded from performing the Material and Substantial Duties of her own occupation as it is performed in the national economy.

33. The Defendant failed to consider the Plaintiff's severe anxiety and depression in their evaluation of her functional capacity.

34. Plaintiff's past work as a customer service representative is skilled work requiring an SVP of 6.

35. Plaintiff's severe anxiety and depression would significantly impact her ability to maintain the concentration, persistence, and pace necessary for skilled work, thus she would only be capable of unskilled work at best.

36. Defendant offered that Plaintiff could take 2 to 3 minute breaks every 30 minutes during the workday. This would result in Plaintiff being off task approximately 72 minutes during the workday.

37. The excessive 72 minutes off task would result in the Plaintiff being unable to maintain and complete the Material and Substantial Duties of her occupation or any occupation without permission to complete overtime hours to compensate for her time off task during the normal workday.

38. The totality of the evidence establishes physical and mental impairments that preclude Plaintiff from performing the material and substantial duties of her regular occupation.

39. Defendant's reliance on the medical opinions of non-examining and non-treating medical consultants is wrong and unreasonable where the evidence establishes physical and mental impairments that preclude Plaintiff from performing the material and substantial duties of her regular occupation.

## II. The Disability Claim – Claim for Benefits

40. From January 20, 2015, through July 20, 2015, Defendant paid Plaintiff short-term disability benefits.

41. On July 21, 2015, Plaintiff notified Defendant that she intended to file a claim for LTD benefits.

## III. The Disability Claim – Appeal of Denial of Benefits

42. On September 15, 2015, Defendant denied Plaintiff's claim for Long Term Disability benefits.

43. On September 18, 2015, Plaintiff submitted a request for review of the Defendant's denial.

44. On January 19, 2016, Defendant denied Plaintiff's appeal of the denial and advised that a voluntary appeal request could be filed within 180 days.

45. On February 27, 2016, Plaintiff again submitted an appeal request.

46. On September 21, 2016, Defendant sent correspondence advising that they denied Plaintiff's appeal and that her benefits would not be payable beyond September 20, 2016.

47. On September 26, 2016, Plaintiff submitted an appeal of her denied claim.

48. In both of Plaintiff's appeals, she alleged that Defendant failed to provide her with a full and fair review of his claim. Defendant relied upon a paper review to support its decision to deny LTD benefits.

49. On February 10, 2017, Defendant issued a final denial of Plaintiff's LTD benefit claim.

## COUNT I. – FIRST CAUSE OF ACTION
## [FOR DECLARATORY RELIEF PURSUANT TO 29 U.S.C. § 1132(a)(1)(b)]

50. Paragraphs 1 through 49 are incorporated herein by reference as if fully set forth at length.

51. An actual controversy exists between Plaintiff and Defendant arising out of the events alleged herein above. Plaintiff contends that Defendant has no legal basis for denying LTD benefits, which have been wrongfully withheld.

52. Plaintiff contends that the denial of LTD benefits is a breach of the Group Long Term Disability Plan; the practices of the Defendant should be estopped on the basis of equity; that the practices of Defendant are arbitrary and capricious; that the practices of Defendant fail to satisfy the minimum requirements of ERISA; and the practices of Defendant are barred as a matter of law.

53. Plaintiff contends that Defendant denied her a "full and fair review" of all of her records submitted by failing to consider information directly related to her LTD claim, minimized and/or failed to review or consider the findings of her treatment providers, while

simultaneously attaching greater weight to the findings of the Defendant's medical consultants.

54. Plaintiff contends that the decision to deny LTD benefits and deny her appeal for benefits was wrongful, unreasonable, irrational, arbitrary and capricious, solely contrary to the evidence and contrary to the terms of the policy and the law and an abuse of discretion.

## COUNT II – SECOND CAUSE OF ACTION
### [FOR RECOVERY OF PLAN BENEFITS PURSUANT TO 29 U.S.C. § 1132(a)(1)(B)]

55. Paragraphs 1 through 54 are incorporated herein by reference as if fully set forth at length.

56. Defendant wrongfully denied LTD benefits based on an unfair, incomplete, arbitrary and capricious review of Plaintiff's medical records and information, and the insufficient and inaccurate reports of their own reviewers.

57. Plaintiff contends that in denying LTD benefits, Defendant disregarded substantial evidence, including medical records and other medical reports.

58. Under the terms of the Group LTD Plan, Defendant unreasonably breached its promise to provide Plaintiff with certain LTD benefits. To date, Defendant has failed to honor this promise and continues to refuse to pay Plaintiff all benefits to which she is rightfully entitled.

59. Plaintiff has satisfied and continues satisfy all conditions precedent under the Group LTD Plans and is thus eligible to receive LTD benefits.

60. Plaintiff has not waived or otherwise relinquished her entitlement to benefits under the Group LTD Plan.

61. Plaintiff seeks reimbursement and compensation for any and all benefits she should have received from July 20, 2015, through the present.

62. Defendant breached its obligations under ERISA to provide Plaintiff benefits even though her benefits are covered under the terms of the Group LTD Plan.

63. As a direct and proximate result of the aforementioned conduct of the Defendant in failing to pay benefits to Plaintiff, she has been damaged in an amount equal to the amount of benefits to which she is entitled under the terms of the Group LTD Plan.

**WHEREFORE**, Plaintiff prays for judgment as follows:

A.  On Count I:

1. A declaration that Plaintiff is disabled and entitled to the payment of benefits under the Group LTD Plan;

2. A declaration that Defendant is hereinafter estopped from wrongfully denying Plaintiff benefits under the Group LTD Plan without a legal basis to do so;

3. A declaration that Defendant is hereinafter estopped from denying Plaintiff benefits as a denial of such benefits is a breach of the Group LTD Plan.

4. A declaration that Defendant is hereinafter estopped on the basis of equity from continuing to deny disability benefits wrongfully withheld from Plaintiff;

5. A declaration that Defendant is hereinafter estopped from wrongfully denying benefits to Plaintiff contrary to clear, compelling and substantial medical and functional evidence.

6. Plaintiff requests the payment of reasonable attorney fees, costs and interest.

7. Plaintiff requests such other and further relief as the Court deems appropriate.

B.  On Count II:

1. Plaintiff seeks a declaration of Plaintiff's right to benefits (past, present and future) under the terms of the Group LTD Plan;

2. Payment of all past benefits due Plaintiff under the terms of the Plan, with an award of pre-judgment interest;

3. Plaintiff requests the payment of reasonable attorney fees, costs and interest.

4. Plaintiff requests such other and further relief as the Court deems appropriate.

By: _____
Mary LeMieux-Fillery, Esq.
Attorney I.D. No. 312785
MARTIN LAW
1818 Market Street, 35th Floor
Philadelphia, PA 19103
(215) 587-8400
Attorney for Plaintiff

Date: 10/4/17